UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
MARK ACCARDI, MARC LAMBERT, and
ERIC TRUBY, individually and on behalf of all other
persons similarly situated,                                 16-CV-3861 (SDA)

                                  Plaintiffs,

      -against-

HONEYWELL INTERNATIONAL INC.

                                  Defendants.
-----------------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated: New York, New York
June 22, 2018

                        BERANBAUM MENKEN LLP

                  By:

                        Jason J. Rozger
                        80 Pine Street, 33rd Floor
                        New York, NY 10005
                        Tel. (212) 509-1616
                        Fax. (212) 509-8088
                        jrozger@nyemployeelaw.com

                    ATTORNEYS FOR PLAINTIFFS AND CLASS

**TABLE OF CONTENTS**

| | |
|---|---:|
| I.  PRELIMINARY STATEMENT | 1 |
| II.  FACTUAL AND PROCEDURAL BACKGROUND | 1 |
| III. ARGUMENT: THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT | 2 |
| A.  Governing Law | 2 |
| B.  The Settlement Is Procedurally Fair | 3 |
| C.  The Settlement Is Substantively Fair | 4 |
| 1.  Complexity, Expense, and Likely Duration of Litigation | 4 |
| 2. Reaction of the Class to the Settlement | 5 |
| 3.  The Stage of the Proceedings and the Amount of Discovery Completed | 5 |
| 4-6.  The Risks of Establishing Liability and Damages, and Risk of Maintaining Class Action Through Trial | 5 |
| 7. The ability of the defendants to withstand a greater judgment | 6 |
| 8-9.  The range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation | 6 |
| D.  The Court Should Approve Payment of the Requested Attorneys' Fees and Litigation Costs to Class Counsel | 7 |
| E.  The Court Should Approve Payment of the Requested Service Awards to the Three Named Plaintiffs | 14 |
| IV. CONCLUSION | 15 |

## I. PRELIMINARY STATEMENT

On April 6, 2018, this Court preliminarily approved the $700,000 class action settlement the parties reached. Since then, notice has been sent to the class members in accordance with the Court's order. The response of the class was overwhelmingly positive, as no class members objected to the settlement, or opted out of the settlement. Plaintiffs accordingly make this unopposed motion for final approval of the class action settlement, and approval of Class Counsel's attorneys' fees and costs.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As previously set forth in Plaintiff's preliminary approval motion brief (Docket No. 69), Plaintiffs filed this case on May 24, 2016, alleging that Defendant failed to pay the New York State mandated prevailing wages for fire alarm, building controls, and security systems work on public buildings in New York. (Docket #1, ¶ 29). After paper discovery and after Defendants provided extensive weekly timesheets, payroll data, and other relevant information concerning the work Plaintiffs and the class performed on Defendant's public works projects in the State of New York, Plaintiffs calculated damages for each class member totaling about $1,200,000, after accounting for Defendant's restitution payments made prior to this lawsuit. (Exhibit 1, p. 2., column. F)[1]. The parties reached an agreement to settle this case on a class-wide basis for a total of $700,000, to be distributed to each class member in proportion to their total damages, after deducting a proposed $175,000 for attorney's fees, $15,000 in incentive awards for each of the three named Plaintiffs, up to $30,000 for expenses advanced by Plaintiffs' counsel, and $15,000 in settlement administration costs. (Exhibit 2, p. 13-14).

---

[1] This was submitted as Exhibit 5 to the preliminary approval motion.

After the settlement was preliminarily approved by the Court, the Court approved notice was mailed to each of the 77 class members[2]. (Mark Patton declaration, ¶4). No class member objected to the settlement, and no class member excluded themselves from the settlement. (*Id.,* ¶¶ 7-8; exhibit 5).  The final expenses advanced by class counsel, mainly expert witness fees, total $26,110.34, somewhat less than the $30,000 budgeted in the settlement agreement. (Exhibit 3).  Administration fees will total the $15,000 budgeted.  Thus, after subtracting those amounts, the $175,000 proposed attorney's fee, and the $15,000 incentive awards for the named Plaintiffs, the net settlement amount totals $468,889.66.  Class members will receive either a minimum payment of $500, or about 34.66% of their net damages, whichever is greater[3].  Thus, the class will receive slightly more than the settlement amounts set forth in the class notice.  The proposed final distribution to each class member is attached as Exhibit 4[4].

### III. ARGUMENT: THE COURT SHOULD FINALLY APPROVE THE SETTLEMENT

#### A.  Governing Law

Pursuant to Federal Rule of Civil Procedure 23(e), the Court must approve the settlement of a class action such as this one.  "Before such a settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Guiliani,* 218 F.3d 132, 138 (2d Cir. 2000).  The fairness, adequacy, and

---

[2]The class list submitted to the Court had 75 class members.  After the court granted preliminary approval, the parties discovered that two class members had inadvertently been left off the class list, both of whom would be entitled to the $500 minimum payment.

[3]Including those class members getting the $500 minimum payment, the class as a whole is receiving a net 39% of the estimated damages ($468,889.66/$1,200,317.44).

[4]Due to rounding, the total distribution on Exhibit 4 is $34.60 less than will be distributed.  The Settlement Administrator will adjust the settlement amounts slightly upward when payments are made.

reasonableness of the settlement is often called "substantive fairness," with the issue of possible collusion is known as "procedural fairness." *In Re Holocaust Victim Asset Litig.,* 105 F. Supp. 2d 139, 145 (E.D.N.Y. 2000).  In evaluating procedural fairness, the Court should look to "the negotiating process, examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves." *Malachman v. Davis,* 706 F.2d 426, 433 (2d Cir. 1983).  In evaluating substantive fairness, courts look to the nine factors enumerated in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974).  These factors are as follows:

> 1) the complexity, expense and likely duration of the litigation; 2) the reaction of the class to the settlement; 3) the stage of the proceedings and the amount of discovery completed; 4) the risks of establishing liability; 5) the risks of establishing damages; 6) the risks of maintaining the class action through trial; 7) the ability of the defendants to withstand a greater judgment; 8) the range of reasonableness of the settlement fund in light of the best possible recovery; 9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463 (citations omitted).  Finally, "it is not a district judge's job to dictate the terms of a class settlement; he should approve or disapprove a proposed agreement as it is placed before him and should not take it upon himself to modify the terms." *In Re Warner Communications Sec. Litig.,* 798 F.2d 35, 37 (2d Cir. 1986).

### B.  The Settlement Is Procedurally Fair.

The conduct of counsel in this litigation, and during settlement negotiations, leaves no doubt that the settlement was achieved as the result of lengthy, adversarial, and difficult negotiations.  These negotiations were conducted after substantial document discovery had taken place, and Plaintiffs expert assisted them in making damages calculations. Thus, these negotiations were conducted by "experienced counsel" who engaged in "the discovery necessary

to effective representation of the class's interests." *Maley v. Del Global Technologies Corp.,* 186 F.Supp.2d 358, 366 (S.D.N.Y. 2002). They were also "extensive, hard fought and took place at arm's length between experienced and skilled attorneys...In this context, courts routinely add the voice of experienced counsel to the mix of considered factors." *Id.* Accordingly, the parties at all times were acting in a procedurally fair, arm's length manner, and there is no hint of collusion to the Settlement. The Settlement is thus procedurally fair.

### C. The Settlement Is Substantively Fair

The Plaintiffs respectfully suggest to the Court that, when applying the *Grinnell* factors to the Settlement, the overwhelming majority of those factors strongly favor a finding that the Settlement is substantively fair to the Class and should be approved.

#### 1. Complexity, Expense, and Likely Duration of Litigation

Considering the first *Grinnell* factor, as the Court is well aware, the trial would be complex, with the Defendant likely to contest the accuracy of the Plaintiffs' damages calculations, as well as whether all of the work at issue is entitled to be paid at prevailing wage rates, such as building controls work, and pure programming of fire alarm and building control systems. The parties would need to take depositions, a considerable expense. The expense and duration of the trial, and likely appeals, would have also been large and lengthy, especially considering the additional expense of manual data entry and damages calculations for the 9000 paper timesheets. Plaintiffs expert would also have to testify at trial, multiplying that expense which is substantial enough as it is. Thus, settling the case saves significant time and expense and eliminates substantial risk, all factors favoring the settlement.

2. Reaction of the Class to the Settlement

The Class's reaction to the Settlement also favors final approval. No class members objected to the settlement, or opted out. (Patton declaration, ¶ 7-8). A low number, or total lack of, objectors are indicative of the adequacy of the settlement. "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy. In fact, the lack of objections may well evidence the fairness of the settlement" *Maley,* 186 F. Supp.2d at 362; see also *D'Amato v. Deutsche Bank,* 296 F.3d 78, 86 (2d Cir. 2001) (18 objectors of 27,883 class notices weighed in favor of settlement). Thus, this factor strongly favors approval.

3. The Stage of the Proceedings and the Amount of Discovery Completed

The parties reached the settlement after exchanging paper discovery, including about 32,000 pages of timesheets and related data produced by Defendants. This was sufficient for Plaintiffs to calculate and estimate damages with reasonable accuracy. Thus, the third factor also favors settlement, as it takes place after the Plaintiffs' thorough examination of the Defendants' relevant data which have left the parties well aware of the issues at hand and in good position to fairly evaluate the risks of continued litigation.

4-6. The Risks of Establishing Liability and Damages, and Risk of Maintaining Class Action Through Trial

The fourth factor also favors settlement, as the Plaintiffs would need to prove that a class is appropriate as to their claims against Honeywell. Plaintiffs would also need to prove that Defendants' employees performing fire alarm programming were "laborers, workmen or mechanics" entitled to prevailing wages under N.Y. Labor Law § 220. The fifth factor has less relevance, since damages would be ascertainable, and even more accurately than the proposed

settlement analysis, albeit at considerable additional expense.  In addition, there is a risk to class certification, because the damages calculations differ between class members, depending on the state of their timesheets, *see Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).  Similarly, given these risks, the net recovery here is favorable to the class and cuts in favor of approving the settlement.  Thus, the proposed settlement is well within the range of fairness required to tentatively certify the class and send the class notice.

### 7. The ability of the defendants to withstand a greater judgment

As Defendants, a large multinational corporation, would have the ability to withstand a larger judgment that the amount of the proposed settlement, this factor does not favor the settlement.

### 8-9. The range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation

The eighth factor, the range of reasonableness of the settlement fund in light of the best possible recovery, taken together with the ninth factor, the range of reasonableness of the settlement fund in light of all of the attendant risk of litigation, favors approval of the settlement. Here, the total settlement is 58% of the potential best possible recovery ($700,000 / $1,200,317) (exhibit 4).  Of course, Plaintiffs and the class would not of course recover 100% of their damages after trial, since expenses and counsel fees would be paid from that award, just as they are paid from the proposed settlement here.

Whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp. 2d 164, 178 (S.D.N.Y. 2000).  "Instead, there is a range of reasonableness with respect to a settlement –

a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir. 1982).

Here, the settlement provides much more than a "fraction of the potential recovery," and the gross percentage of potential recovery of 58% reasonable given the risks and additional delay that would be endured by the class for going forward. Accordingly, for all the foregoing reasons, the settlement is substantively and procedurally fair, and should be approved by the Court.

### D. The Court Should Approve Payment of the Requested Attorneys' Fees and Litigation Costs to Class Counsel

As set forth in the settlement agreement, class counsel seek an award of attorneys' fees in the amount of $175,000. This represents 25% of the common fund created by the settlement. These agreements regarding fees between counsel are commonplace and frequently approved. *Malchman v. Davis*, 761 F.2d 893, 905 (2d Cir. 1985). The Court, at this juncture, must ascertain what a fair and reasonable fee would be to compensate class counsel. Judicial economy and efficiency is fostered by reasonable settlements, and a "prompt and efficient attorney who achieves a fair settlement without extensive litigation serves both his client and the interests of justice." *McKenzie Construction Inc. v. Maynard,* 758 F.2d 97, 101-2 (3d Cir. 1985). "In the context of a complex class action, early settlement has far reaching benefits in the judicial system." *Maley,* 186 F. Supp.2d at 373.

Where class counsel creates a common fund, courts use either the 'lodestar' method' or the 'percentage of the fund' method," *Walmart Stores v. Visa U.S.A.,* 396 F.3d 96, 121 (2d Cir. 2005), although "[t]he trend in this Circuit is toward the percentage method, which "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," *id.,* 396 F.3d at 121. The percentage method is beneficial as it aligns counsel's incentives with that of the class, and encourages early settlements. *Id; see also In re BioScrip, Inc. Sec. Litig.,* 273 F. Supp. 3d 474, 486 (S.D.N.Y. 2017) ("the percentage method to calculate a fee award from a common fund can serve as a benefit to the class in two ways: first, by aligning counsel's incentives with the class at the time the settlement is negotiated ...and second, by counteracting any incentive counsel might have to eschew early settlement so as to increase their lodestar over the course of protracted litigation").

The court in *In re Hi-Crush Partners L.P. Securities Litigation*, 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014), surveyed the results in numerous settlements in this Circuit obtaining judicial approval, and confirmed the appropriateness of a 33 and 1/3% fee award in a common fund class action settlement:

> In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund." *In re Beacon Assocs. Litig.,* 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013). Courts in this District have approved percentage-based fee awards comparable to the amount requested here. *See City of Providence [v. Aeorpostale, Inc.],* 2014 WL 1883494, at *20 (S.D.N.Y., May 9, 2014) (awarding 33% of $15 million settlement); *Fogarazzo v. Lehman Bros. Inc.,* No. 03 Civ. 5194, 2011 WL 671745, *4 (S.D.N.Y. Feb. 23, 2011) (awarding 33.3% of $6.75 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.,* 279 F.R.D. 151, 165 (S.D.N.Y.2001) (awarding 33% of $13 million settlement); *In re Van Der Moolen Holding N.V. Sec. Litig,* No. 03 Civ. 8284, slip. op. at 2 (S.D.N.Y. Dec. 7, 2006) (awarding 33 1/3% of $8 million settlement) (ECF No. 45) (Ex. 11); *Maley,* 186 F.Supp.2d at 367–68 (awarding 33 1/3% of $11.5 million settlement and citing two cases which awarded 33 1/3% of the settlement amount: *In re Apac Teleservs., Inc. Sec. Litig.,* No. 97 Civ. 9145, slip op. at 2 (S.D .N.Y. June 29, 2001) (Docket # 54),

awarding 33 1/3% of $21 million settlement; and *Newman v. Caribiner Int'l Inc.,* No. 99 Civ. 2271 (S.D.N.Y. Oct. 25, 2001) (Docket # 31), awarding 33 1/3 of $15 million settlement); *see also Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Khait v. Whirlpool Corp.,* No. 06 Civ. 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement).

Of course, the proposed attorney fee here is only 25%, considerably less than the cases identified above.

In determining the reasonableness of a requested class action fee, courts consider the factors identified in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Those factors are:

(1) the time and labor expended by counsel;
(2) the magnitude and complexities of the litigation;
(3) the risk of the litigation;
(4) the quality of representation;
(5)  the requested fee in relation to the settlement; and
(6) public policy considerations.

*Id.,* 209 F.3d at 50. Class counsel respectfully suggests that these "*Goldberger* factors" support the reasonableness of their fee application.

### 1. The Time and Labor expended by Counsel

Counsel spent 230.1 hours of attorney time litigating this case, for a value of $93,420 (exhibit 6). Counsel met with the multiple class representatives, engaged in extensive legal research, devised a class action strategy, conducted discovery, reviewed tens of thousands of pages of written discovery, and worked with an expert witness and Defendant's counsel to devise a damages calculation based on a complex set of timekeeping data. Class counsel will also continue to communicate with class members concerning their settlement checks. Thus, the time and effort expended by class counsel is considerable.

### 2. The Magnitude and Complexities of the Litigation

This litigation lasted over two years, and six years and involved numerous defendants with interlocking and overlapping defenses, and required an appeal. At trial, proving liability and damages using the multiple formats of Defendant's time records would be a time-consuming task requiring expert testimony. In addition, Plaintiffs would likely have had to examine hundreds of public works contracts, and summarize them in an acceptable way as part of their proof at trial. *See Ramos v. SimplexGrinnell LP,* 796 F. Supp. 2d 346, 362 (E.D.N.Y. 2011), vacated in part, 773 F.3d 394 (2d Cir. 2014). Thus, this case was fairly complex, and would be more so if it proceeded to trial.

### 3. The Risk of the Litigation

At the time this action started, class counsel took considerable risk in prosecuting this as a class action. Counsel also incurred substantial expert witness expenses. Although Plaintiffs could have brought individual claims in court or through the Department of Labor, they chose to bring a class case to make a larger impact. Facing a multi-national corporation defended by experienced and skilled counsel, Plaintiffs could very well have lost this case at trial and class counsel would have been out thousands of dollars in expenses.

As noted by the Southern District of New York in a recent class action settlement:

> Plaintiffs' Class Counsel ha[s] received no compensation during the course of this litigation despite having made a significant time commitment and incurred significant expenses to bring this matter to a successful conclusion for the benefit of the Class. Any fee award or expense reimbursement to Plaintiffs' Class Counsel has always been contingent on the result achieved and on this Court's exercise of its discretion in making any award. Class Counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated.

*Maley*, 186 F. Supp.2d at 372 (quotations omitted). *See also, City of Detroit v. Grinnell Corp.,* 356 F. Supp. 1380 (S.D.N.Y. 1972), *aff'd in part and rev'd in part on other grounds,* 495 F.2d 448 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless of success"). In short, class counsel maintains that the risks associated with difficult wage and hour litigation supports this request for attorneys' fees, as agreed to by Defendant in the settlement agreement.

### 4. The Quality of Representation

Class Counsel respectfully suggests that the quality of the representation of the class supports the request for the fee award, as well. This is the most important *Goldberger* factor. "The critical element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the Class through the efforts of such counsel." *Maley,* 186 F. Supp.2d at 374. Here, the monetary results achieved for the class are substantial and fair, particularly in proportion to the greatest amount Plaintiffs might recover at trial.

Further proof that the monetary aspect of the settlement exceeded the expectations of the class is the fact that no class members opted out or objected to the settlement. The court approved notice was distributed to all class members and it explained, as part of the settlement agreement, that class counsel would seek attorneys' fees and costs and explained how those fees would be calculated. *Id.* It further provided class members with the opportunity to object to the settlement, including the request for fees and costs, and no class member has done so. *Id.* "As was true with the underlying settlement, this overwhelmingly positive response by the Class attests to the approval of the Class with respect to the Settlement and the fee and expense application." *Maley,* 186 F. Supp.2d at 374.

### 5. The Requested Percentage of the Settlement Fund is Fair and Reasonable, and is also Commensurate with Other Settlements

The Court, in considering the award of attorneys' fees, must look to both the percentage of the fund sought and the collective lodestar of class counsel. *Wal-Mart Stores*, 396 F.3d at 123, n. 27. Here, the requested fee is 25%, less than the 1/3 that is commonly awarded, *see In Re Hi Crush*, *supra*; *see also Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 WL 3995619, at *20 (S.D.N.Y. Sept. 11, 2017) (approving fees of 2.1 times the "somewhat inflated" lodestar, or 30% of the settlement fund).

In addition, the lodestar "Cross-Check" confirms the reasonableness of the requested fee. The Second Circuit permits courts to utilize a lodestar "cross-check" to further test the reasonableness of a percentage-based fee. *See Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000). The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paraprofessional by their current hourly rate, and totaling the amounts for all timekeepers. *Hi-Crush Partners,* 2014 WL 7323417, at *18. Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig,* 225 F.R.D. 436, 468 (S.D.N.Y.2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger,* 209 F.3d at 47); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010). "Where the lodestar is 'used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re Veeco Instruments Inc.,* 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) (quoting *Goldberger,* 209 F.3d at 50).

As set forth in Exhibit 6 and the accompanying declaration of Jason Rozger, Esq., Plaintiff's counsel has expended 230.10 attorney hours in this case, for a total lodestar of $93,420. The requested fee of $175,000 therefore represents a "multiplier" of 1.87. This is well within the range of reasonableness when compared with other awards. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548(RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012). ("Courts commonly award lodestar multipliers between two and six"); *Wal-Mart* (multiplier of 3.5 approved on appeal); *Maley* v. Del Global Technologies Corp., 186 F.Supp.2d 358, 371 (S.D.N.Y.2002) (approving a "modest" multiplier of 4.65 as fair and reasonable); *In Re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (court awarded multiplier of 3.97, noting that "[i]n recent years multipliers of between 3 and 4.5 have become common"). Accordingly, the requested $175,000 fee is fair and reasonable.

Class counsel also seek reimbursement of their litigation expenses. Counsel expended $26,110.37 litigating this case. (Exhibit 3). All of these expenses were incidental and necessary to the representation of the class. Courts typically allow class counsel to recover their reasonable out-of-pocket expenses. *In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F.Supp.2d 180, 183 n.3 (S.D.N.Y. 2003).

Based on the above, counsel respectfully suggests to the Court that the counsel fee requested is reasonable in light of the extensive time and labor expended, the magnitude of the litigation, the risks taken in the litigation, the monetary results achieved for the class, and the amount of the fee in proportion to the monetary settlement and other benefits achieved. Class counsel requests that the Court approve the requested fee and reimbursement of the litigation expenses.

**E.  The Court Should Approve Payment of the Requested Service Awards to the Three Named Plaintiffs**

Courts routinely approve service awards (sometimes called "incentive awards") in wage and hour class action cases.  It is very common in class and collective cases for service or incentive payments to be paid to named Plaintiffs or class representatives in addition to their proportionate share of the recovery. Such payments compensate Plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action.  Courts around the country have approved substantial incentive payments in FLSA collective actions and other employment-related class actions.  *See, e.g., Willix v. Healthfirst, Inc.,* 07 Civ. 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (service awards of $30,000, $15,000 and $7,500 found reasonable); *Mentor v. Imperial Parking Sys., Inc.,* 05 Civ. 7993, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2012 (service awards of $40,000 and $15,000 found reasonable where named plaintiffs actively involved in prosecuting case during its five year pendency); *In re Janney Montgomery Scott LLC Fin. Consultant Litigation*, 2009 WL 2137224, *12 (E.D. Pa. Jul. 16, 2009) (approving incentive payments of $20,000 each to three named Plaintiffs).

One of the key factors considered in determining the amount of a service award is the time and effort expended by the applicant and the value added by the applicant due to his or her factual expertise. *Roberts v. Texaco, Inc.*, 979 F.Supp 185, 200 (S.D.N.Y. 1997).   Here, the three named Plaintiffs were actively involved in this case since its inception.  They were available and responsive to class counsel, answered questions via telephone, responded to interrogatories and document requests, and provided responsive documents in response to Defendants' discovery requests.  sat for their depositions.  Based on the service provided and the modest amount

sought, the Court should approve payment of the requested $5,000 service awards to each of the three named Plaintiffs and class representatives.

## IV. CONCLUSION

For the foregoing reasons, this Court should (a) grant final approval of the class settlement and settlement payment schedule; (b) approve payment of attorneys' fees to class counsel in the amount of $175,000; (c) approve reimbursement of litigation costs to class counsel of $26,110.37; (d) approve payment to the Settlement Administrator of $15,000; and (e) approve payment of service awards of $5,000 each to the three named plaintiffs and class representatives.

                                          Respectfully submitted,

Dated: New York, New York
        June 22, 2018

                                          BERANBAUM MENKEN LLP

                              By:        _____/s/_____
                                          Jason J. Rozger
                                          80 Pine Street, 33rd Floor
                                          New York, NY 10005
                                          Tel. (212) 509-1616
                                          Fax. (212) 509-8088
                                          jrozger@nyemployeelaw.com

                                ATTORNEYS FOR PLAINTIFFS AND PROPOSED CLASS